UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: FREEMAN ANDREW HARDIN                    CHAPTER 7
        DEBTOR

      MAINSOURCE BANK                    CASE NO.  15-33081-thf
        CREDITOR

## MOTION FOR RELIEF FROM THE STAY
## AND FOR ORDER OF ABANDONMENT

Comes the Creditor, MainSource Bank, by counsel, pursuant to Bankruptcy Rule 4001, 11 U.S.C. §362 and 11 U.S.C. §554 of the Bankruptcy Code and for its Motion states as follows:

1.    That the Creditor is the holder of a note and perfected mortgage in the Debtor's property, to wit: real estate located at 818 S. 40th Street, Louisville, KY 40211, with a total balance due of $39,584.16; and of an equity line and perfected mortgage, with a total balance due of $20,619.08.

2.    That pursuant to 11 U.S.C. Section 362(d)(1), the Creditor states that it lacks adequate protection for its interest in said property, and such property is not necessary to an effective reorganization pursuant to 11 U.S.C. Section 362 (d)(2)(B).

3.    That pursuant to 11 U.S.C. §554(b) the Creditor states that the property is of inconsequential value and benefit to the Estate.

4.    That Bankruptcy Rule 4001(a)(3) does not apply for the purposes of this motion.

**WHEREFORE**, the Creditor demands an Order terminating the Automatic Stay and abandoning this property from the Estate.

Respectfully submitted,

MORGAN & POTTINGER, P.S.C.

___/s/ Molly E. Rose_____
MOLLY E. ROSE
601 West Main Street
Louisville, KY 40202
(502) 589-2780
*Counsel for Creditor*

## CERTIFICATE

I hereby certify that a true copy of the foregoing Pleading was sent to the Debtor, Counsel for the Debtor, and the Trustee electronically through the US Bankruptcy Court's ECF system at the electronic address set forth in the ECF system and/or was sent to the address as set forth in the Bankruptcy Notice.

___/s/ Molly E. Rose_____
MOLLY E. ROSE

*Any objections to the motion must be filed within 14 days from the date this Motion was filed. If no written objection is received, an order approving the Motion may be entered.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

| UNITED STATES BANKRUPTCY COURT | Western District of Kentucky | | PROOF OF CLAIM |
|---|---|---|---|

| Name of Debtor: Freeman Andrew Hardin | Case Number: 15-33081 | |

NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**MainSource Bank**

**COURT USE ONLY**

Name and address where notices should be sent:
MainSource Bank
PO Box 507
Greensburg, IN 47240

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**
_(If known)_

Telephone number: (812) 663-0129   email: jshoover@ma nsourcebank.com

Filed on _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:   email:

**1. Amount of Claim as of Date Case Filed:**   $   39,584.16

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Money Loaned
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**   3 1 3 6   (See instruction #3a)

**3a. Debtor may have scheduled account as:**   (See instruction #3a)

**3b. Uniform Claim Identifier (optional):**

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑Real estate ☐Motor Vehicle ☐Other
Describe: 818 S 40th Street, Louisville, KY 40211

**Value of Property:** $ 88,000.00

**Annual Interest Rate** 4.625% ☑Fixed or ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$   4,568 19

Basis for perfection: Mortgage

**Amount of Secured Claim:**   $   39,584.16

**Amount Unsecured:**   $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(_).

**Amount entitled to priority:**   $

*Amounts are subject to adjustment on 4/1/15 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** *(See instruction #8)*

Check the appropriate box.

☑ I am the creditor.  ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Janice Hoover
Title: Collections Processing Supervisor
Company: MainSource Bank
Address and telephone number (if different from notice address above):

(Signature)   (Date)

Telephone number: (812) 663-0120   email: jshoover@mainsourcebank.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules that apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 1 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury, wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable) and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Freeman Andrew Hardin | Case number: | 15-33081 |
| Name of creditor: | MainSource Bank | Last four digits of any number you use to identify the debtor's account | 0  1  3  6 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date included in the Amount of Claim listed in Item 1 on your Proof of Claim form:

1. Principal due     (1) $ 35,976.60

2. Interest due

| | Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|---|
| | 4.63 % | 07/16/2015 | 09/23/2015 | $ 782.72 |
| | % | | | $ |
| | | | | $ |

Total interest due as of the petition date     $ 782.72   Copy total here ▶ (2) + $ 782.72

3. Total principal and interest due     (3) $ 36,759.32

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 9/16/2014 - 8/17/2015 | (1) | $ 155.74 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ |
| 3. Attorney's fees | | (3) | $ |
| 4. Filing fees and court costs | | (4) | $ |
| 5. Advertisement costs | | (5) | $ |
| 6. Sheriff/auctioneer fees | | (6) | $ |
| 7. Title costs | | (7) | $ |
| 8. Recording fees | | (8) | $ |
| 9. Appraisal/broker's price opinion fees | | (9) | $ |
| 10. Property inspection fees | 8/19/2014 - 4/2/2015 | (10) | $ 128.00 |
| 11. Tax advances (non-escrow) | | (11) | $ |
| 12. Insurance advances (non-escrow) | | (12) | $ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | 9/17/2015 | (13) | $ 2,373.02 |
| 14. Property preservation expenses. Specify _____ | | (14) | $ |
| 15. Other. Specify: Jefferson County Metro Loan | 9/17/2015 | (15) | $ 371.00 |
| 16. Other. Specify: _____ | | (16) | $ |
| 17. Other. Specify: _____ | | (17) | $ |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above | | (18) | $ 3,027.76 |

B 10A (Attachment A) (12/11)                                                                                              Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☑ No

☐ Yes    Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with
          applicable nonbankruptcy law.

| | | | | |
|---|---|---|---|---|
| 1. | Installment payments due | Date last payment received by creditor | 07/16/2015 | |
| | | | *mm/dd/yyyy* | |
| | | Number of installment payments due | | |
| 2. | Amount of installment payments due | 4 installments @ | $ 370.27 | |
| | | 1 installments @ | $ 562.27 | |
| | | installments @ | + $ | |
| | | **Total installment payments due as of the petition date** | $ 2,043.35 | Copy total here ▶ (2) $ 2,043.35 |
| 3. | Calculation of cure amount | **Add** total prepetition fees, expenses, and charges | Copy total from Part 2 here ▶ | + $ 3,027.76 |
| | | **Subtract** total of unapplied funds (funds received but not credited to account) | | - $ 202.92 |
| | | **Subtract** amounts for which debtor is entitled to a refund | | - $ 0.00 |
| | | **Total amount necessary to cure default as of the petition date** | | (3) $ 4,868.19 |

Copy total onto item 4 of Proof of
Claim form

ιυ

ык 12007PG ·673

**Freeman A Hardin**

18952ix

Return To:
MainSource Bank
201 N Broadway
Greensburg, IN 47240
Prepared By
MainSource Bank
201 N Broadway
Greensburg, IN 47240

Prepare

[Space Above This Line For Recording Data]

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 24, 2015
together with all Riders to this document
(B) "Borrower" is Freeman A Hardin, and                    husband and

Borrower is the mortgagor under this Security Instrument.

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3318 1/01 (rev. 10/01)

-6(KY)-oskis
Page 1 of 15                    Initials
    VMP Mortgage Solutions Inc.

*F.M.*

· 12007PG 674

(C) "Lender" is MainSource Bank.

Lender is a Commercial Bank
organized and existing under the laws of Indiana.
Lender's address is 201 N Broadway, Greensburg, IN 47240

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated May 24, 2010.
The Note states that Borrower owes Lender FORTY EIGHT THOUSAND AND 00/100
Dollars
(U.S. $48,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1, 2025          . This Security
Instrument secures 150% of the principal amount of the Note, but any amount secured in excess of the
amount stated in the second sentence of this paragraph must be a "Protective Advance" as defined by
Section 26 hereof (or, if the rate of interest is adjustable, may be interest added to principal, commonly
called "negative amortization")
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ V.A Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

1 2 0 0 7 PG · 6 7 5

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                             [Type of Recording Jurisdiction]
of Jefferson                                                                           [Name of Recording Jurisdiction]
see attached legal description

Tax Parcel ID Number 06-G43D-0087-0000                          which currently has the address of
818 S 40th Street                                                                                                        [Street]
Louisville                                                            City, Kentucky 40211           [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-6(KY) (0811)                                    Page 3 of 15                   -6(KY)              Form 3018   1/01 (rev. 12/01)

12007PG 676

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow

F 1

2007PG  677

Items.* At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges: Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

ME 12007PG 678

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-GA(KY) (0811)                              Page 5 of 15        Initials         Form 3018  1/01 (rev. 10/03)

BK2007PG679

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-6(KY) (0211)                    Page 7 of 14        Initials ___        Form 3018   1/01 (rev. 10/03)

13 2007PG 680

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments of Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to

™ 1 2 0 0 7 PG 681

these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-6(KY) (____)    Page 9 of 17    Form 3518  1/01 (rev. 10/01)

12007PG 582

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6(KY) Page 11 of 15 Initials Form 3018 1/01 (rev. 10/01)

J U

12007PG 683

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expense incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-6 (KY) Page 11 of 15 Form 3018 1/01 (rev 10/01)

```
...12007PG 684
```

certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-6(KY) (c011)                                          Page 12 of 15               c.m 3318   1 01 (rev. 1012 1)

12007PG 685

Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

25. Taxes and Assessments on Mortgage Insurance Premiums. If mortgage insurance premiums are required to be paid by Borrower pursuant to Section 10, then in addition to such premiums, Borrower shall pay all taxes and assessments thereon for so long as Borrower is required by Lender to pay the premiums. All taxes and assessments on premiums due and payable by Borrower shall be considered an Escrow Item and shall be paid by Borrower to Lender in the manner provided for Escrow Items in Section 3.

26. Protective Advances. This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under Sections 5, 9, or 14 hereof; (a) to pay any Escrow Items, (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument, or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to Applicable Law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

To the extent that any Protective Advances are deemed to be "future advances" or "additional indebtedness" within the meaning of KRS 382.520, this Security Instrument secures such future advances or additional indebtedness, provided that the total indebtedness at any one time outstanding shall not exceed 150% of the original principal amount of the Note, with interest thereon, and whether or not evidenced by notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner provided by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Note and this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by Applicable Law.

E. H.

<sup>BK</sup> I 2 0 0 7 PG · 6 8 6

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____  _____  _____  _____ (Seal)
                                                 Kroomah A Hardin        -Borrower

                                                        ·

_____  ___  _____  __  ___              ·   _____  ____ (Seal)
                                                                       -Borrower

_____  ___  _____  ___  __ (Seal)    __  _____  _ (Seal)
                                  -Borrower                          -Borrower

____  ___  _____  ___ (Seal)         _____  _____ (Seal)
                              -Borrower                                  -Borrower

____  ___  _____  __ (Seal)          _____  ___  ___  _____  _____ (Seal)
                             -Borrower                                  -Borrower

48 | 2007 PG 687

STATE OF KENTUCKY,　　　　　　Jefferson　　　　County ss:

The foregoing instrument was acknowledged before me this　　May 24, 2000
by Freeman A Hardin.　　　　　　　　, husband

known to me (or satisfactorily proved) to be the person(s) whose name(s) is are subscribed to the within instrument and acknowledged that he she (they) executed the same for the purposes therein contained

My Commission Expires　　2-24-2004

Notary Public

Debbie Burkeen

This Instrument Prepared by

## Agency Title, Inc.
## 1812 Heaton Road
## Louisville, KY 40216

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-6(KY)　　　　　Page 13 of 15　　Initials　　　　Form 3018　1/01 (rev. 10/01)

" 12007PG 688

File No : 18952

## EXHIBIT A

Being the Southern 32 feet in width of Lot 19 Doerhoeffer's 40th Street Subdivision, plat of which is of record in Plat and Subdivision Book 4, Page 69, in the Office of the Clerk of the County Court of Jefferson County, Kentucky.

Being the same property acquired by Freeman A. Hardin and Teresa L. Hardin, by Deed dated March 16, 2006, of record in Deed Book 8798, Page 281, in the Office of the Clerk of Jefferson County, Kentucky.

Document No.: DN20100/0114
Lodged By: agency title
Recorded On:   06/02/2010        10:10:50
Total Fees:              56.00
Transfer Tax:             .00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: SMESCH

# END OF DOCUMENT

Freeman A. Hardin

# NOTE

| May 24, 2010 | New Albany | Indiana |
|---|---|---|
| [Date] | [City] | [State] |

818 S 42th Street
Louisville, KY 40211
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $46,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **MainSource Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.625** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **July 01, 2010**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1, 2025**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **201 N Broadway**
**Greensburg, IN 47240** or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $370.27.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01
Page 1 of 3

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of any overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**Borrower**

_____ 5-21-2010
Freeman A Hazdin                    Date
                                    (Seal)

_____             Date
                                    (Seal)

_____             Date
                                    (Seal)

_____             Date
                                    (Seal)

                                    [Sign Original Only]

[ ] Refer to the attached *Signature Addendum* for additional parties and signatures.

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | Western District of Kentucky | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Freeman Andrew Hardin | Case Number: 15-33081 | |
|---|---|---|

NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):
MainSource Bank

Name and address where notices should be sent:
MainSource Bank
PO Box 507
Greensburg, IN 47240

Telephone number: (812) 663-0120   email: jshoover@mainsourcebank.com

Name and address where payment should be sent (if different from above):

Telephone number:   email:

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:   $   20,619.08

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim:   Money Loaned
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:   8  5  6  7

3a. Debtor may have scheduled account as: _____
(See instruction #3a)

3b. Uniform Claim Identifier (optional): _____
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑Real Estate  ☐Motor Vehicle  ☐Other
Describe: 818 S 40th Street, Louisville, KY 40211

Value of Property: $   88,000.00

Annual Interest Rate 5.000% ☑Fixed  or  ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$   628.19

Basis for perfection:   Mortgage

Amount of Secured Claim:   $   20,619.08

Amount Unsecured:   $ _____

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$ _____

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction 7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain.

8. **Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)   or their authorized agent.   (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Janice Hoover
Title:  Collections Processing Supervisor
Company:  MainSource Bank
Address and telephone number (if different from notice address above):

_____
(Signature)   (Date)

Telephone number: (812) 663-0120   email: jshoover@mainsourcebank.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules that may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 11 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable) and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly nonpriority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves (FRBP 3001(c) and (d)). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Freeman Andrew Hardin | Case number | 15-33081 |
| Name of creditor: | MainSource Bank | Last four digits of any number you use to identify the debtor's account | 8  5  6  7 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date included in the Amount of Claim listed in Item 1 on your Proof of Claim form.

1. Principal due                                                                                                    (1)  $ ____19,898.21

2. Interest due

| | Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|---|
| | 5.00% | 06/01/2015 | 09/23/2015 | $  434.55 |
| | | | | $ _____ |
| | | | | + $ _____ |
| | Total interest due as of the petition date | | | $  434.55   Copy total here ▶ (2) + $ ____434.55 |

3. Total principal and interest due                                                                                 (3)  $  20,332.76

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date included in the Amount of Claim listed in Item 1 on the Proof of Claim form.

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 6/20/2013 - 11/20/2014 | (1) | $ ____270.32 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ _____ |
| 3. Attorney's fees | | (3) | $ _____ |
| 4. Filing fees and court costs | | (4) | $ _____ |
| 5. Advertisement costs | | (5) | $ _____ |
| 6. Sheriff/auctioneer fees | | (6) | $ _____ |
| 7. Title costs | | (7) | $ _____ |
| 8. Recording fees | | (8) | $ _____ |
| 9. Appraisal/broker's price opinion fees | | (9) | $ _____ |
| 10. Property inspection fees | 3/16/2015 | (10) | $ ____16.00 |
| 11. Tax advances (non-escrow) | | (11) | $ _____ |
| 12. Insurance advances (non-escrow) | | (12) | $ _____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ _____ |
| 14. Property preservation expenses. Specify: _____ | | (14) | $ _____ |
| 15. Other. Specify _____ | | (15) | $ _____ |
| 16. Other. Specify _____ | | (16) | $ _____ |
| 17. Other. Specify _____ | | (17) + | $ _____ |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $  286.32 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☑ No

☐ Yes    Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law

| 1. | Installment payments due | Date last payment received by creditor | 06/01/2015 |
| | | | mm/dd/yyyy |
| | | Number of installment payments due | +1        4 |

| 2. | Amount of installment payments due | ___ installments @ | $ _____ 87.23 |
| | | ___ installments @ | $ _____ 85.64 |
| | | ___ installments @ | + $ _____ 79.05 |
| | | Total installment payments due as of the petition date | $ _____ 341.87    Copy total here ▶  2. $ _____ 341.87 |

| 3. | Calculation of cure amount | **Add** total prepetition fees, expenses, and charges | Copy total from Part 2 here ▶  + $ _____ 256.32 |
| | | **Subtract** total of unapplied funds (funds received but not credited to account) | - $ _____ 0.00 |
| | | **Subtract** amounts for which debtor is entitled to a refund | - $ _____ 0.00 |
| | | **Total amount necessary to cure default as of the petition date** | 3. $ _____ 623.19 |

Copy total onto Item 4 of Proof of Claim form.

12033PG 770

FREEMAN HARDIN

--- --- --- --- --- --- ---

[Space Above This Line For Recording Data]
# MORTGAGE
## ***THIS IS A FUTURE ADVANCE MORTGAGE***

THIS MORTGAGE ("Security Instrument") is made on June 14, 2010. The mortgagors are Freeman A Hardin, whose address is 818 S 40th Street, Louisville, Kentucky 40211 , and                    , husband whose address is 818 South 40th Street, Louisville, Kentucky 40211 ("Borrower"). Borrower is not necessarily the same as the Person or Persons who sign the Contract. The obligations of Borrowers who did not sign the Contract are explained further in the section titled Successors and Assigns Bound; Joint and Several Liability; Accommodation Signers. This Security Instrument is given to MainSource Bank, which is organized and existing under the laws of the State of Indiana and whose address is 100 East Spring Street, New Albany, County of Floyd, Indiana 47150 ("Lender") Freeman A Hardin has entered into a Equity - Line of Credit ("Contract") with Lender as of June 14, 2010, under the terms of which Borrower may, from time to time, obtain advances not to exceed, at any time, a ***MAXIMUM PRINCIPAL AMOUNT (EXCLUDING PROTECTIVE ADVANCES)*** of Twenty Thousand and 00/100 Dollars (U.S. $20,000.00) ("Credit Limit"). Any party interested in the details related to Lender's continuing obligation to make advances to Borrower is advised to consult directly with Lender. If not paid earlier, the sums owing under Borrower's Contract with Lender will be due and payable on July 10, 2020. This Security Instrument secures to Lender: (a) the repayment of the debt under the Contract, with interest, including future advances, and all renewals, extensions and modifications of the Contract; (b) the payment of all other sums, with interest, advanced to protect the security of this Security Instrument under the provisions of the section titled Protection of Lender's Rights in the Property; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Contract. For this purpose, Borrower, in consideration of the debt, does hereby mortgage, grant and convey to Lender the following described property located in the County of Jefferson, State of Kentucky:

Address: 818 S 40th Street, Louisville, Kentucky 40211

Legal Description: See Exhibit "A", attached hereto and made a part thereof

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

Page 1 of 7

1 2 3 3 : 6   7 7 1

**Payment of Principal and Interest; Other Charges.** Borrower shall promptly pay when due the principal of and interest on the debt owed under the Contract and late charges or any other fees and charges due under the Contract.

**Applicable Law.** As used in this Security Instrument, the term "Applicable Law" shall mean all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. At the request of Lender, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien, an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with section titled **Protection of Lender's Rights in the Property**.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within the number of days prescribed by Applicable Law as set forth in a notice from Lender to Borrower that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The period of time for Borrower to answer as set forth in the notice will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments due under the Contract or change the amount of the payments. If under the section titled **Acceleration; Remedies**, the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in section titled **Borrower's Right to Reinstate**, by causing the action or proceeding to be

2 0 3 1 5   1 7 2

dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Contract. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this section, Lender does not have to do so.

Any amounts disbursed by Lender under this section shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the same rate assessed on advances under the Contract and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless Applicable Law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within the minimum number of days established by Applicable Law after the date the notice is given, Lender is authorized to collect and apply the proceeds at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments due under the Contract or change the amount of such payments.

**Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by

reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**Successors and Assigns Bound; Joint and Several Liability; Accommodation Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of section titled **Transfer of the Property or a Beneficial Interest in Borrower.** Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Security Instrument but has no personal liability under the Contract ("Accommodation Signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey that Accommodation Signer's interest in the Property under the terms of the Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Contract without that Accommodation Signer's consent.

**Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Contract or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Contract.

**Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**Governing Law; Severability.** This Security Instrument shall be governed by federal law and the laws of the state of Kentucky. In the event that any provision or clause of this Security Instrument or the Contract conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Contract which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Contract are declared to be severable.

**Borrower's Copy.** Borrower shall be given one conformed copy of this Security Instrument.

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than the minimum number of days established by Applicable Law from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as Applicable Law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument, or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Contract as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c)

pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees to the extent permitted by law; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under the section titled **Transfer of the Property or a Beneficial Interest in Borrower**

**Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph "Environmental Law" means federal laws and laws of the state of Kentucky that relate to health, safety or environmental protection.

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Contract under which acceleration is permitted (but not prior to acceleration under the section titled Transfer of the Property or a Beneficial Interest in Borrower, unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than the minimum number of days established by Applicable Law from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. To the extent permitted by law, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**Release.** Upon payment of all sums secured by this Security Instrument and termination of Borrower's right to obtain further advances under the Contract, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**Taxes and Assessments on Mortgage Insurance Premiums.** If mortgage insurance premiums are required to be paid by Borrower pursuant to the section titled **Mortgage Insurance**, then in addition to such premiums Borrower shall pay all taxes and assessments thereon for so long as Borrower is required by Lender to pay the premiums. All taxes and assessments on premiums due and payable by Borrower shall be considered an Escrow

·2·.·3·.·  ·i·i·5

lien and shall be paid by Borrower to Lender in the manner provided for Escrow Items in the section titled **Funds for Taxes and Insurance.**

**Protective Advances.** This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under **Hazard or Property Insurance, Protection of Lender's Rights in the Property,** or **Loan Charges** hereof, (a) to pay any Escrow Items; (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument; or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to Applicable Law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

To the extent that any Protective Advances are deemed to be "future advances" or "additional indebtedness" within the meaning of KRS 382.520, this Security Instrument secures such future advances or additional indebtedness, provided that the total indebtedness at any one time outstanding shall not exceed 150% of the original Credit Limit established under the Contract, with interest thereon, and whether or not evidenced by notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner provided by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Contract this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by Applicable Law.

**Oral Agreements Disclaimer.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in all pages of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Freeman A Hardin_   6-19-10

Freeman A Hardin                    Date

                                    Date

Witnessed by:

Name:                Date      Name:              Date

200329  776

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF     INDIANA          )
                             )
COUNTY OF    FLOYD           )

Before me, Anita J Dudley, a Notary, this _____ Freeman A Hardin, and
_____ acknowledged the execution of the foregoing instrument. In witness whereof, I hereunto set my
name and my official seal

My commission expires 6/10/2015

Notary residing at 100 E Spring Street, New          _____
Albany, IN 47150 in _____              Anita J Dudley
County                                            Notary
                                                  Floyd County, IN
                                                  Identification Number

NOTARY PUBLIC
SEAL
STATE OF INDIANA

**ANITA J. DUDLEY**
Notary Public, Clark Co., IN
My Comm. Expires 6/10/2015

(Official Seal)

THIS INSTRUMENT WAS PREPARED BY:          AFTER RECORDING RETURN TO
MainSource Bank                           MainSource Bank
Linda Amberger                            201 N Broadway, PO Box 87
P.O. Box 87                               GREENSBURG, IN 47240
GREENSBURG, IN 47240

                                          Linda Gregory

Linda Amberger            Date
              for MainSource Bank

+ 2 0 3 3 5 6   7 1 7

## EXHIBIT "A"

Being the Southern 32 feet in width of Lot 19 Doerhoeffer's 40th Street Subdivision, plat of which of record in Plat and Subdivision Book 4, Page 60, in the Office of the Clerk of the County Court of Jefferson County, Kentucky.

Being the same property acquired by Grantor pursuant to the provisions of the National Housing Act, as amended (12 USC 1701 et seq.) and the Department of Housing and Urban Development Act (79 Sta. 667) by Commissioner's Deed dated AUGUST 18, 2005 and recorded in Deed Book 8707, Page 25, in the office of the Clerk of JEFFERSON County, Kentucky.

Document No.: 2020100324114
Lodged By: mainsoutre
Recorded On:   06/26/2010      08:23:43
Total Fees:            32.00
Transfer Tax:            .00
County Clerk: BOBBIE nULS(CLAW-JEFF Cu kr
Deputy Clerk: CARMIR

# FREEMAN HARDIN

**HOME EQUITY LINE OF CREDIT AGREEMENT
AND TRUTH IN LENDING DISCLOSURE STATEMENT**

MainSource Bank - New Albany
109 East Spring Street
New Albany, Indiana 47150
(812)948-5500



| ACCOUNT NUMBER | AGREEMENT DATE | LOAN OFFICER | BRANCH ID | CREDIT LIMIT |
|---|---|---|---|---|
| | June 14, 2010 | Paulette Smith | MainSource Bank - New Albany | $20,000.00 |

**MATURITY DATE: July 10, 2020**

## BORROWER INFORMATION

**Freeman A Hardin
818 S 40th Street
Louisville, KY 40211**

Thank you for requesting a Home Equity Line. This is the Agreement governing its use.

In this Agreement, the words "you" and "your" refer to all persons (individually and, if more than one, jointly) who sign this Agreement.

The words "we," "our," "us" and "Lender" refer to MainSource Bank - New Albany, with which you maintain a Home Equity Line, or any other person or entity to which MainSource Bank - New Albany assigns this Agreement, or any of its rights under this Agreement.

**DEFINITIONS.** In relation to your Account and this Agreement, the following words shall have the meaning indicated:

"Access Device" means a device or method of access, such as a check, a credit card, an telephonic transfer, and a internet banking transfer, through which you can request an Advance.

"Account" means the Home Equity Line approved by Lender for your use.

"Advance" means an extension of credit to you or on your behalf under this Agreement.

"Agreement" means this Home Equity Line Agreement and Disclosure Statement.

"Annual Percentage Rate" means the cost of your credit expressed as a yearly rate. The Annual Percentage Rate for your Account will be calculated as set forth below in the ANNUAL PERCENTAGE RATE section of this Agreement.

"Application" means your request to Lender for the establishment of a Home Equity Line in a manner approved by Lender.

"Billing Cycle" means the time period that elapses between regular Monthly Billing Statements.

"Change Date" means the date on which a different Annual Percentage Rate may apply to your Account, as set forth below in the ANNUAL PERCENTAGE RATE section of this Agreement.

"Closing Date" means the date of the last day of a Billing Cycle.

"Collateral" means the property you have pledged to secure your Account, is evidenced by the Mortgage you have granted to Lender in connection with this Agreement. The Mortgage secures the property located at:

**818 S 40th Street, Louisville, KY 40211**

"Credit Limit" means the maximum amount of credit available to you on your Account as established by Lender as set forth below in the CREDIT LIMIT section of this Agreement.

"Credit Purchase" means an Advance to you for the purchase of merchandise or services through a participating merchant.

"Daily Periodic Rate" means 1/365th of the applicable Annual Percentage Rate as calculated in the ANNUAL PERCENTAGE RATE section of this Agreement, set forth below.

"Draw Period" means the period of time after your Account is opened during which you may obtain Advances under the terms of this Agreement.

"Finance Charge" means the cost of credit extended to you on your Account, as determined by Lender, expressed as a dollar amount.

"Material Obligations" refer to any italicized and bolded text in this document.

"Minimum Monthly Payment" means the minimum allowable payment as calculated in the MINIMUM PAYMENT REQUIREMENTS section of this Agreement, set forth below.

"Monthly Billing Statement" means the statement furnished to you on a monthly basis reflecting all charges and credits to your Account during the Billing Cycle.

"New Balance" means the total of the Previous Balance, plus Credit Purchases, plus Advances, plus Finance Charge, plus other applicable fees and charges, minus payments and credits, posted to your Account during a Billing Cycle.

"New Credit Purchase" means a Credit Purchase posted to your Account during the Billing Cycle reflected on your most recent Monthly Billing Statement. There may be multiple New Credit Purchases on any particular Monthly Billing Statement.

"Payment Due Date" means the date on which payment on your account is due. The Payment Due Date is specified on your Monthly Billing Statement.

"Previous Balance" means the balance of your Account at the beginning of a Billing Cycle. This amount is carried over from the New Balance on your Monthly Billing Statement from the month before.

"Protective Advance" means an advance of funds made by Lender, under the terms of this Agreement, to protect Lender's security interest in the Collateral, as set forth below in the sections ADVANCES, SECURITY INTEREST and DEFAULT AND ACCELERATION. Protective Advances will be charged to your Account as an Advance.

**PROMISE TO PAY.** *You promise to pay Lender, pursuant to the terms of this Agreement, all amounts charged to your Account by you or any person who has access to your Account with the actual, apparent, or implied authority to use the Account, including Finance Charges and other costs and fees, and to the extent permitted by law, reasonable attorneys' fees, and costs of collection.*

**JOINT AND SEVERAL LIABILITY.** If your Account is a joint Account, all liability is joint and several.

**ADVANCES.** You may, from time to time, request Advances under your Account by the use of checks, credit cards, telephonic transfers, and internet banking transfers, furnished or made available to you by Lender. If the Account is opened jointly, all borrowers are authorized to request Advances, not exceeding the Credit Limit, and all borrowers agree to be jointly and severally responsible for each and all Advances. Lender is not obligated to honor any Access Device either than those supplied or approved by Lender. Lender also is not obligated to honor any Access Device that would cause you to exceed your Credit Limit or that is presented after credit privileges on your Account have been suspended. If Lender allows you to exceed your Credit Limit, the principal amount you owe in excess of your Credit Limit after deducting Protective Advances will be exercised.

**TRANSACTION REQUIREMENTS.** The following transaction requirements apply to your Account:

*The minimum Advance that you may request at any particular time is $100.00.* Any attempt to access your Account for less than this minimum may be denied by Lender and any Access Device written for less than this minimum may be returned unpaid by Lender.

**CANCELLED CHECKS.** Cancelled checks will not be returned to you, but if you make a specific request, Lender will provide photocopies of cancelled checks free of charge.

**CREDIT LIMIT.** This Account has a Credit Limit, at any one time outstanding, of **$20,000.00.** *You agree to keep the unpaid balance of your Account within the Credit Limit.* If Lender allows Advances which cause this limit to be exceeded, you agree to repay the excess immediately upon demand.

**FEES AND CHARGES.** The following fees and charges are payable, or have been paid, in connection with your Account Application Fees. You paid the following fees and charges at the time of application:

| | | |
|---|---|---|
| Flood certification | POCL | $12.00 |
| Lender's title insurance | POCL | $46.00 |
| Deed / Mortgage / Release | POCL | $28.00 |

| LEGEND | |
|---|---|
| **POC**: Paid Outside Closing | **POCSB**: Paid Outside Closing: Seller & Borrower |
| **POCS**: Paid Outside Closing: Seller | **POCSL**: Paid Outside Closing: Seller & Lender |
| **POCB**: Paid Outside Closing: Borrower | **POCBL**: Paid Outside Closing: Borrower & Lender |
| **POCL**: Paid Outside Closing: Lender | **POCBSL**: Paid Outside Closing: Borrower, Seller, & Lender |

**MISCELLANEOUS FEES AND CHARGES.** Your Account is subject to the following charges:

**Annual Maintenance Fee.** An Annual Maintenance Fee of **$50.00 will be due on the yearly anniversary of the opening date on the contract.** The Fee will be charged to the consumer's Account as an Advance.

**Stop Payment Fee.** Each Account check on which you stop payment is subject to a stop payment fee of $29.00. At Lender's discretion, any and all such fees may be added to your outstanding balance as an Advance.

**RETURNED CHECK FEE.** For each check, draft, or order which you submit to Lender for a payment which is returned to Lender unpaid, Lender may charge you a returned check fee of $28.00. The amount of the returned check fee will not exceed the maximum amount allowed by applicable law as amended from time to time to time. At the option of Lender and after any notice required by applicable law, Lender may add the fee to the balance owing under this Agreement.

**HAZARD INSURANCE.** *You agree to insure the Collateral through a company of your choice subject to Lender's reasonable approval, and you further agree to pay any costs associated with obtaining and maintaining such insurance. You agree to name Lender as loss payee or, at Lender's request, mortgagee in the insurance policy. You agree to deliver satisfactory evidence of such insurance to Lender upon request.*

**MINIMUM PAYMENT REQUIREMENTS.** Your Account will have a Minimum Monthly Payment during the Draw Period as described below. The Minimum Monthly Payment may be increased for any amount past due, any amount by which the Credit Limit is exceeded, and all other charges. Minimum payment requirements apply regardless of payments made in prior months but are subject to your right to withhold payment of amounts that you have disputed under disclosed billing error resolution procedures. Payment will be due on the Payment Due Date specified in your Monthly Billing Statement. Subject to the minimum payment requirements described in this section, you may pay any or all parts of your outstanding balance at any time without penalty. *All payments you make on your Account shall be in lawful money of the United States of America.*

**Draw Period.** You can obtain advances of credit for 119 months (the "Draw Period") During the Draw Period, payments will be due monthly Your Minimum Monthly Payment will be equal to (i) the accrued interest as of the closing date of each billing statement, or (ii) $50.00, whichever is greater (unless your unpaid balance is less than the latter amount, in which case your Minimum Monthly Payment will be your unpaid balance)

**BALLOON PAYMENT.** After the Draw Period ends, you will no longer be able to obtain credit advances. Paying only your Minimum Monthly Payment may repay less than the outstanding balance at the end of the Draw Period. You will be required to pay the entire unpaid balance that you owe end any outstanding fees or charges at the end of the Draw Period in a single balloon payment

**FIRST PAYMENT DATE.** Your first payment will be due on August 10, 2010.

**LATE PAYMENT.** *If the Minimum Monthly Payment is more than 10 days late, Lender will impose a late charge of $17.50. The amount that Lender may charge will be adjusted biennially, as provided by Indiana law.* In addition, Lender may, but is not required to, make an Advance on your behalf to pay the Minimum Monthly Payment past due and all late charges

**APPLICATION OF PAYMENTS.** Lender reserves the right to apply payments received in payment of your Account in any manner Lender may choose, in Lender's sole discretion, unless a specific order is required by law. Generally, Lender will elect to apply each payment in the following order: accrued but unpaid Finance Charges from prior billing cycles, current billing cycle unpaid Finance Charges; premiums for optional credit insurance, if any, annual maintenance fee, if applicable; late charges, unpaid principal, any amounts by which you have exceeded your credit limit

**FINANCE CHARGE.** A Finance Charge will be assessed on the Daily Balance of your Account for every day of your Billing Cycle A Finance Charge begins to accrue whenever an Advance is posted to your Account, regardless of when and how much you pay after being billed. To get the Daily Balance, Lender takes the beginning balance of your Account for every day of the Billing Cycle, adds all new Advances, subtracts all payments and credits, all unpaid late charges, all unpaid Finance Charges, and all other charges. This gives Lender the daily balance. Lender figures the Finance Charge on your Account by multiplying the applicable Daily Periodic Rate by the Daily Balance of your Account for each day in the Billing Cycle. These amounts are then added together. The resulting sum is the amount of Finance Charge for the Billing Cycle

**ANNUAL PERCENTAGE RATE.** Your Account will be subject to a variable Annual Percentage Rate equal to the Wall Street Journal published Prime Rate ("Index") (if published in a range, the highest number in the range will be used) ("Index") in effect on the Change Date , plus 1.000 percentage point ("Margin"), rounded to the nearest one-eighth of one percentage point (0.125). A change in the Index will cause a change in the Annual Percentage Rate as of the Change Date, which is the same day as the Index change. Increases or decreases in the Annual Percentage Rate will result in like increases or decreases in the Finance Charge you owe on your Account, but will not affect the method that Lender uses to determine your Minimum Monthly Payment. If your Minimum Monthly Payment amount during the Draw Period is based on the interest that has accrued as of the closing date of each billing statement, as specified in the MINIMUM PAYMENT REQUIREMENTS section, then an increase in the Annual Percentage Rate will result in higher Minimum Monthly Payment amounts. If your Minimum Monthly Payment amount during the Draw Period is equal to the dollar amount specified in the MINIMUM PAYMENT REQUIREMENTS section, then an increase in the Annual Percentage Rate may result in you having to make more Minimum Monthly Payments of the same amount. Your Account is currently subject to a Daily Periodic Rate of 0.013699% and an ***ANNUAL PERCENTAGE RATE*** of 5.000%. In any event, your Annual Percentage Rate will never be less than 5.000% per annum nor more than 18.000% per annum. Except as limited by these minimum and maximum amounts, there is no limit on the amount the Annual Percentage Rate can increase or decrease on any Change Date You understand that the reference to the Index specified in this Agreement is solely for the purpose of establishing an Index from which the Annual Percentage Rate actually assessed on your Account will be determined, and that the Annual Percentage Rate is figured by referencing the Index specified and not by referencing the actual rate of interest charged by any institution to any particular borrower(s)

**IRREGULAR PAYMENTS.** Lender's acceptance of late payments or partial payments, or payments marked "payment in full," or bearing language to the same effect, will not operate as a waiver of any of its rights under this Agreement. Lender's acceptance of such irregular payments will not affect your unpaid balance as reflected in Lender's records except to the extent that such payments would affect your unpaid balance were such payments not irregular

**ACCOUNT ACCESS AND LOST ACCESS DEVICES.** All Access Devices, including checks, credit cards, telephone transfer access codes, and internet banking transfer access codes, are the property of Lender. You agree to return all Access Devices in your possession upon Lender's request if, at the time of the request, Advances have been suspended or terminated. *You will immediately notify Lender if you lose or misplace any Access Device, or you believe your Telephonic transfer or Internet Banking transfer Access Code (personal identification number) has been stolen. If you lose an Access Device which is a check and if the check is presented to and honored by Lender, then at Lender's option, you will be liable for up to the stated face amount of the check.*

**MONTHLY STATEMENTS AND NOTICES.** Lender will furnish you a Monthly Billing Statement showing the transactions on your Account during the preceding Billing Cycle. You agree to review each statement and advise Lender in writing of any errors or problems within sixty (60) days after Lender furnishes you the first Monthly Billing Statement on which the error or problem appears. Likewise, *you agree to*

*notify Lender promptly and in writing of any change in your address.* Each Monthly Billing Statement is deemed to be a correct statement of your Account unless you establish a billing error under the Federal Truth In Lending Act.

**SECURITY INTEREST.** *You give Lender a Mortgage on real property ("Security Instrument") as Collateral to secure all Advances up to your Credit Limit.* However, Protective Advances are secured by the Collateral even if they cause the Account balance to exceed the Credit Limit. *You agree to fully cooperate with Lender at its request and do whatever is necessary for Lender to take or continue its interest in the property that is intended to be Collateral for your Account. Except for liens described in the Security Instrument delivered to Lender, you agree not to permit, create, or allow any mortgage, encumbrance, or other lien on the Collateral described in the Security Instrument without Lender's prior written consent.*

The Collateral given under this SECURITY INTEREST section is to secure the performance of the covenants in this Agreement, including, without limitation, repayment of all Advances and payment of accrued Finance Charge and other charges. Even if any provision contained in any other document related to this Agreement says otherwise, it is specifically understood and agreed that the only security interest given to Lender for the purposes of this Agreement is in the real property described in the Security Instrument and all improvements situated on that real property, including your dwelling.

**RIGHT OF RESCISSION.** If your Account is secured by a security interest in your principal residence, you are entitled to a three (3) day right of rescission under federal law. By obtaining the first Advance of your Account, you warrant and acknowledge that before the Advance, more than three (3) business days passed from the time Lender provided all of the individuals entitled to rescind this Agreement with two (2) copies each of the notice of right of rescission, as well as copies of Truth in Lending Disclosures (at application and closing, including the Truth In Lending disclosures contained in this Agreement) and a copy of the Home Equity Brochure published by the Federal Reserve Board, and that no person entitled to rescind has exercised this right of rescission.

**NOTIFICATION OF INTENT TO SELL PROPERTY.** *You agree to give Lender prior written notice of any intended sale or other transfer, whether as security or otherwise, of property which is Collateral for the amounts due under this Agreement. You acknowledge and agree that the sale or other transfer of such property without Lender's written consent is a default under this Agreement. Further, you agree that this loan cannot be assumed by any other party nor can title to the property be taken subject to this Agreement.*

**DEFAULT AND ACCELERATION.** You will be in "default" if: (a) You fail to make payments according to the terms of this Agreement, including, to the extent permitted by law, through the filing of a bankruptcy action; or (b) You make a false or misleading statement, including any act of omission, on your Account application or in any representation to Lender while your Account is open, to the extent that fraud or misrepresentation as determined by state law occurs; or (c) You act or fail to act in a way that adversely affects the Collateral or any rights of Lender in the Collateral.

If you are in default as provided for above, Lender may, after any required notices and to the extent permitted by law, terminate your Account and declare the entire balance of your Account immediately due and payable. At Lender's option, Lender may instead, after any required notice and to the extent permitted by law, temporarily or permanently prohibit additional Advances or reduce your Credit Limit. However, even if your Account is terminated, Advances suspended, or Credit Limit reduced, Lender may still, but is not required to, make Protective Advances to protect its interest in the Collateral. All Protective Advances are subject to the terms of this Agreement and are secured by the Collateral.

**CANCELLATION.** You may cancel your Account at any time by notifying Lender in writing. If two or more persons are obligated under this Agreement, any one of them may provide Lender with a written request not to permit further Advances under this Agreement, which request Lender may honor. If such an action occurs and the person who made the request to Lender subsequently requests in writing that Lender reinstate all privileges, Lender may do so or Lender may require that all persons obligated under this Agreement agree in writing to reinstate credit privileges. In any event, Lender shall not be obligated to reinstate credit privileges if other conditions exist that permit Lender to suspend Advances.

**TEMPORARY SUSPENSION OF CREDIT AND/OR REDUCTION OF CREDIT LIMIT.** Lender may, after any required notice and to the extent permitted by law, temporarily prohibit Advances and/or reduce your Credit Limit if:

1. The value of the dwelling securing your Account declines significantly below the appraised value upon which Lender relied in extending credit under this transaction; or

2. Lender reasonably believes that you will not be able to meet your Account repayment requirements due to a material change in your financial condition; or

3. You are in default of a material obligation under this Agreement (your material obligations for this purpose are as stated in this Agreement); or

4. Government action prevents Lender from imposing the Annual Percentage Rate called for, or impairs Lender's security for your Account such that the value of the Collateral is less than 120% of your Credit Limit; or

5. A regulatory agency notifies Lender that continued Advances would constitute an unsafe and unsound practice; or

6. The Annual Percentage Rate would exceed the maximum rate allowed under your Account.

If Lender temporarily prohibits Advances or reduces your Credit Limit because any of the above conditions exist, within three business days after the time such action is taken, Lender will mail or deliver a written notice of such action, including a reason for it, to each person who is affected. If Advances have been suspended or your Credit Limit reduced, you will have to make a written request to Lender for reinstatement of your credit privileges or Credit Limit to the prior level before Lender will consider such reinstatement. If you make such a request, Lender will investigate and determine whether the condition which caused Lender's action has changed. You will be notified of Lender's reinstatement action or that Lender's prior action remains in effect. If the condition which caused Lender's action has changed, but another condition exists

which use T allows certificated temporary suspension of credit and/or reduction of Credit Limit and/or Account termination, Lender may react to such condition in a manner consistent with this Agreement

**WAIVERS.** (a) To the extent permitted by law, you agree to waive presentment, notice of dishonor, and protest on behalf of yourself and all makers, sureties, guarantors, and endorsers of the Agreement. The obligations of this Agreement shall be the binding upon them and their successors and assigns. (b) You agree to waive and release Lender from all defenses, rights, and claims you may have against any person or company honoring an Access Device or not permitting a Credit Purchase, except where such rights cannot be waived under the Fair Credit Billing Act (see NOTICE OF CONSUMER BILLING RIGHTS) or other applicable law.

**GOVERNING LAW.** Except as federal law may apply, this Agreement is governed by the laws of the state of Indiana.

**AMENDMENT.** Lender may change the terms of this Agreement. If the change is to your unequivocal benefit, by mailing or delivering notice to you of the change within the time limits described by the Federal Truth in Lending Act and Regulation Z. In addition, Lender may change the terms of this Agreement

1. If this is a variable rate Agreement and the Index used to determine the variable interest rate under this Agreement ceases to exist, in which case Lender may substitute an appropriate Margin and an appro, ate and substantially similar Index; or

2. If you agree to the change in writing, or

3. If the change is insignificant, such as a change in Lender's address for sending a notice of an alleged billing error

**TAX DEDUCTIBILITY.** You should consult a tax advisor regarding the deductibility of interest and charges under this equity line of credit.

**SETOFF.** To the extent permitted by law, Lender has the right to set off any mutual indebtedness. This right will not extend to any Keogh account or IRA

**COLLECTION OF COSTS.** *To the extent permitted by law, you agree to reimburse Lender for all reasonable costs, expenses, and reasonable attorneys' fees incurred in enforcing its rights under this Agreement.* To the extent permitted by law, Lender may, but is not required to, make one or more Advances on your behalf to pay such costs, expenses, and fees

**FUTURE INFORMATION.** *Whenever you seek an advance on your Account, Lender may require such proof as it deems necessary to verify your identity. You agree to provide information to update Lender's records related to your Account, and any other financial information related to you, at Lender's request.*

**BILLING STATEMENTS.** Lender will furnish you a Monthly Billing Statement every month in which there is a debit or credit of more than one dollar ($1.00) or whenever a Finance Charge has been imposed. Lender does not have to furnish you a Monthly Billing Statement if it believes that your Account is uncollectible or if it has started a collection proceeding

**AGREEMENT ENFORCEMENT.** If any provision of this Agreement is determined to be unenforceable or invalid by a court of competent jurisdiction, all other provisions will remain in full force and effect. If you cancel your Account, or if your Account is terminated, this Agreement will remain in effect, to the extent applicable, as to any unpaid balance.

**ASSIGNMENT.** *This Agreement may not be assigned by you without Lender's prior written consent.* You understand and agree that Lender may assign this Agreement and the security interest securing it without your prior written consent.

**LENDER'S RIGHTS.** Lender does not lose any of its rights, whether arising under this Agreement, any other instrument related to this Agreement, by law, or otherwise, if it delays enforcing them or waives them in a particular instance

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties

**ADDITIONAL PROVISIONS. A $250.00 Early Termination Fee is charged if closed in the first two years of the contract.**

**SIGNATORY.** By signing below, you acknowledge that you are contractually liable under this Agreement. You also acknowledge receipt of a copy of this Agreement, Truth in Lending Disclosures provided by Lender to you at or about the time you requested an application, and a copy of the Home Equity Brochure published by the Federal Reserve Board

Freeman A Hardin      Date

## NOTICE OF CONSUMER BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

In the following Notice, Borrower is referred to as "you" or "your"

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet, at our address shown on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- a) Your name and account number
- b) Dollar amount of the suspected error
- c) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it is finally is.

If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

#### Special Rule for Credit Card Purchases.

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

- a) You must have made the purchase in your home state, or, if not within your home state, within 100 miles of your current mailing address; and
- b) The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.